# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Carlos Alberto Rodrigues De Freitas,
individually and as administrator of Isabel
Aparecida Auler's estate,

     Plaintiff

v.

The Hertz Corporation,

     Defendant

Case No.: 2:18-cv-01522-JAD-BNW

**Order Granting in Part and Denying in Part Cross Motions for Summary Judgment**

[ECF Nos. 124, 126]

     This tort action arises from a collision in the Hertz rental-car return area at the Las Vegas airport on New Year's Day 2017. Robert Stevens maintains that the vehicle he rented from Hertz began to accelerate uncontrollably as he entered the company's return lanes—a malfunction his wife had phoned Hertz about, only to be ignored—causing him to strike Carlos Alberto Rodrigues De Freitas and his late domestic partner Isabel Aparecida Auler as they returned their own rental car. De Freitas sues the Hertz Corporation on behalf of himself and Auler's estate on negligence-based theories, claiming that Hertz owed a duty to prevent such injury to its customers.

     Both parties cross move for partial or complete summary judgment with Hertz primarily disclaiming any such duty and adding that Stevens's negligent driving was an unforeseeable intervening cause, and De Freitas contending that the evidence conclusively establishes Hertz's liability and his standing to bring loss-of-consortium and negligent-infliction-of-emotional-distress claims.[1] I find that the record does not support an award of punitive damages, entitling

---

[1] ECF Nos. 124, 126. I find these motions suitable for disposition without oral argument. L.R. 78-1.

Hertz to summary judgment on that aspect of this case, and that the domestic partnership between De Freitas and Auler gives De Freitas standing to pursue his derivative claims. But genuine issues of material fact preclude summary judgment on any other claims or issues, so I grant the motions only in part and order the parties to a settlement conference with the magistrate judge before proceeding to trial on De Freitas's remaining claims.

**Discussion**

**I.      Standards for cross-motions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[2]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[3]  If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[4]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[5]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[3] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[4] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[5] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

present significant probative evidence tending to support its claim or defense."[6]  When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[7] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[8]  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[9]

## II.    Negligence claim

De Freitas's first claim is for negligence based on a premises-liability theory.[10]  "It is well established that, to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages."[11]  "Causation has two components: actual cause and proximate cause."[12]  Hertz

---

[6] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

[7] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[8] *Celotex*, 477 U.S. at 322.

[9] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[10] ECF No. 119 at 7–8.

[11] *Clark Cnty. Sch. Dist. v. Payo*, 403 P.3d 1270, 1279 (Nev. 2017) (quoting *Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009)) (cleaned up).

[12] *Id.* (citing *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 107 (Nev. 1998), *disfavored on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 14–15 (Nev. 2001)).

argues that it owed no duty to De Freitas and Auler as a matter of law and, even if it did, Stevens's negligence was an unforeseeable intervening cause that prevents the plaintiffs from establishing the proximate-cause element.  De Freitas contends that the evidence of Hertz's duty and breach are so clear that he is entitled to summary judgment in his favor on Hertz's liability.

> **A.    Genuine issues of fact about foreseeability preclude summary judgment on the duty element of the negligence claim.**

"In Nevada, a proprietor owes an invitee a duty to use reasonable care to keep the premises in a reasonably safe condition for use."[13]  But the duty "to take affirmative action to reasonably attempt to prevent the wrongful acts of third persons" on those premises "arises only [if] there is reasonable cause to anticipate such acts and the probability of injury resulting" from those acts.[14]  That duty thus "turns on whether" the proprietor "exercised control over the premises and whether" the third party's actions were "reasonably foreseeable."[15]  And although the question of whether a defendant owed the plaintiff a duty of care is typically one of law,[16]

---

[13] *Doud v. Las Vegas Hilton Corp.*, 864 P.2d 796, 799 (Nev. 1993), *superseded by statute on other grounds as stated in Estate of Smith v. Mahoney's Silver Nugget, Inc.*, 265 P.3d 688, 691 (Nev. 2011).

Hertz begins its motion by relying on cases that hold that "a Nevada motor vehicle owner is not per se vicariously liable in tort for the negligence of a permissive user" absent negligent entrustment.  ECF No. 124 at 4.  But Hertz's reliance on this line of authority is misplaced.  Hertz didn't lend a car to its neighbor; Hertz is in the rental-car business.  So I apply instead the authority related to proprietors of businesses, which is more applicable.  And, indeed, Hertz itself later cites to that line of cases, too.  *See id.* at 5–7.

[14] *Doud*, 864 P.2d at 799; *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996).

[15] *Scialabba*, 921 P.2d at 931.

[16] *Id.* at 930.

1  "[i]n general, whether a proprietor could foresee the wrongful acts of a third person and the

2  probability of injury is a question of fact, and thus a jury question."[17]

3      It is undisputed that Hertz exercised control over its own Hertz-branded rental-car-return

4  area, but genuine issues of material fact surround the foreseeability prong and preclude me from

5  finding as a matter of law that Hertz owed—or did not owe—a duty to protect De Freitas and

6  Auler from being struck by Stevens's vehicle there.  De Freitas theorizes that it was reasonably

7  foreseeable to Hertz that collisions could occur and people could get struck by vehicles in the

8  return area.[18]  Hertz argues that the subject accident happened because "Stevens confused the gas

9  and brake pedals of the vehicle" and this wrongful act was not foreseeable because there is no

10 evidence of prior pedal-confusion accidents at a Hertz return area.[19]

11      The Nevada Supreme Court's decision in *Estate of Smith ex rel. Smith v. Mahoney's*

12 *Silver Nugget, Inc.*, which extensively addressed how a court should evaluate foreseeability for

13 the duty element of a third-party-act negligence claim, illustrates that Hertz's characterization of

14 the wrongful act is too narrow.[20]  The question in *Smith* was whether the Silver Nugget casino

15 could be held liable in negligence after a rowdy patron, who was being eighty-sixed from the bar

16 inside the casino, pulled out a concealed firearm and fatally shot Smith, another patron who had

17 entered the fray.[21]  The district court granted summary judgment for the casino based on a lack

18

---

19 [17] *Basile v. Union Plaza Hotel & Casino*, 887 P.2d 273, 275 (Nev. 1994) (reversing grant of
summary judgment in negligence action because "whether [hotel-casino] had a duty to take
20 affirmative action to control [a fleeing patron's] actions remain[ed] an open issue that c[ould]
only be resolved after the jury answers the question of the foreseeability of [the plaintiff's]
21 injury").

[18] *See generally* ECF No. 126 (plaintiff's motion for partial summary judgment).
22 [19] ECF No. 124 at 7–8, 15.

23 [20] *Est. of Smith ex rel. Smith v. Mahoney's Silver Nugget, Inc.*, 265 P.3d 688 (Nev. 2011).

[21] *Id*. at 690.

of duty, and the Nevada Supreme Court affirmed because "the circumstances leading up to Smith's murder did not provide the requisite foreseeability for imposing a duty upon the Silver Nugget" as, among other things, "there were no prior incidents of similar wrongful acts that occurred on the premises."[22]  In deciding which acts were "similar" for foreseeability purposes, the court rejected Smith's offer of the more general "criminal incidents occurring in and around the Silver Nugget," including "fistfights and robberies" without weapons or injuries and reports of firearms by non-patrons in the parking lot, but it also did not narrow the scope of "wrongful acts" to the unique facts of the murder.[23]  Instead, it struck a balance by looking for "prior criminal acts that involved firearms or handguns in the premises . . . ."[24]  This approach is consistent with the Restatement (Second) of Torts, which Nevada has adopted, and which recognizes that, "[i]f the place or character of" a business or past experience should lead a proprietor to "reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, [that business] may be under a duty to take precautions against it. . . ."[25]

Here, a rational jury could find that it was foreseeable that a returning rental car would strike another patron in the return lanes due to either driver error or vehicle malfunction.  That determination could be made based on the character of Hertz's operations, Hertz's past experience, or actual notice.  The very nature of Hertz's operation is to provide unfamiliar vehicles to customers who will use them temporarily and then return them to Hertz by driving them into a queue where other similar customers are exiting and removing their belongings from

---

[22] Id. at 693.

[23] Id.

[24] Id.

[25] Doud, 864 P.2d at 799 (quoting Restatement (Second) of Torts § 344 cmt. f (1977)).

other cars.[26]  As Hertz's rental-car facilities expert Jeffrey Jarvis[27] testified, sometimes "dozens

and dozens of cars . . . are coming at the same time."[28]  He conceded at his deposition that "[i]n

general, an errant driver is a foreseeable occurrence"[29] and that "[c]ar rental customers are an

enhanced risk as they may not be familiar with the car they are driving."[30]  As to past experience,

Gregory Orr, who was working at the Hertz return area when this incident occurred, testified that

he recalled "an incident where a gentleman pulled in a car, and he had left it in neutral, and it

rolled and actually pinned a lady's leg in between the back of the car she was unloading stuff

from."[31]  So a jury could thus conclude that it was foreseeable to Hertz that errant drivers in the

rental-car-return lanes would strike other customers who were returning their Hertz rental cars.[32]

A reasonable jury could also conclude on this record that Hertz owed the plaintiffs a duty

to keep them safe from vehicles that malfunction in the return lanes.  Hertz's SOP 24A19 walks

its employees through a standard operating procedure to follow when a customer reports "My

Accelerator is broken/My vehicle accelerate [sic] by itself."[33]  It offers this "tip": "A broken

accelerator pedal may make vehicle unsafe to drive."[34]  And it advises the employee to arrange

---

[26] *See, e.g.,* ECF No. 127-17 at 8 (depo. Jeffrey Jarvis, Hertz's designated expert on rental-car facilities).

[27] This statement is not a finding as to this potential witness's qualifications.

[28] *Id*. at 10.

[29] *Id*. at 21.

[30] *Id*. at 22.

[31] ECF No. 131-11 at 5 (Orr depo.).

[32] Although Hertz makes much of the fact that its corporate representative Stephen Blum said that "[t]his type of thing" has never happened at Hertz in 30 years, ECF No. 131-14 at 23, Blum also testified that there is no way to search Hertz's database of records to confirm this.  *Id*. at 25–26.  So Blum's testimony does not absolve Hertz of such a duty, particularly in light of Orr's contradictory recollection.

[33] ECF No. 86-1 at 2.

[34] *Id*.

for a tow or tell the customer to take a cab.[35]  The Nevada Supreme Court recognized in *Basile v. Union Plaza Hotel & Casino* that such policies and procedures are evidence of foreseeability for purposes of establishing a duty in a third-party-acts negligence case.[36]

But there's more than just Hertz's SOP 24A19 that the jury could rely on to find that a malfunctioning-vehicle accident was foreseeable.  Stevens testified that this accident happened because his rental car was accelerating on its own[37]—a malfunction that his wife had called and warned Hertz about.[38]  Mrs. Stevens testified at her deposition that she called Hertz to inform the company that "the main problem" was that the "vehicle was accelerating when [Mr. Stevens] didn't want it to."[39]  She claimed that the first time that happened was the day that she and her husband picked up the car from Hertz.[40]  Although she didn't remember whom she spoke to at Hertz, she claims that she told the representative that "it's accelerating and speeding when we don't want it to, and we feel unsafe and we want to return this car and get something different."[41]  She maintains that Hertz told her it would be difficult to get a different car because it was a

---

[35] *Id.*

[36] *Basile v. Union Plaza Hotel & Casino*, 887 P.2d 273, 275 (Nev. 1994) (finding that hotel's policy designed to dissuade patrons being approached by security guards from fleeing demonstrated that the hotel "had reasonable cause to anticipate" such flight).

[37] ECF No. 131-4 at 5–15 (R. Stevens depo.).

[38] *Id.* at 13.  The parties also suggest that Stevens's version of events is not to be believed because there is no mechanical evidence to corroborate it.  But, as the Ninth Circuit explained in *Nelson v. Davis*, "[a] judge must not grant summary judgment based on [her] determination that one set of facts is more believable than another."  571 F.3d 924 (2009).  Whether to believe Stevens's detailed version of what transpired or conflicting evidence "is just the type of credibility determination that must be left to the factfinder[ ] and not made by a judge on summary judgment."  *Id.*

[39] ECF No. 133-22 at 9 (P. Stevens depo.).

[40] *Id.*

[41] *Id.* at 10.

1   holiday weekend and that "[n]o matter what, [she] will not get a refund or a credit if [Hertz] even

2   d[id] find another car."[42]   She testified that she thought "Hertz should have come and picked up

3   the car from the hotel" because she "made it clear to [Hertz that she] thought something was

4   wrong with the car."[43]   Hertz urges me to ignore this testimony as "self [] serving" and because

5   "[a] thorough search . . . shows no record of such a phone call."[44]   But whether or not this call

6   occurred is a genuine issue of material fact that the jury must decide, for the Ninth Circuit has

7   made it clear that credibility determinations are "exclusively within the province of the factfinder

8   at trial, not the district court on summary judgment."[45]   And if the jury finds that this call in fact

9   happened as Mrs. Stevens claims, it could reasonably conclude that Hertz was on direct notice

10   that the Stevenses' rental car would be accelerating uncontrollably in its return lanes yet did

11   nothing to prevent that dangerous condition.

12          The testimony of Hertz's own expert about the nature of the rental-car-return area; Orr's

13   testimony about a prior, similar incident; Hertz's own SOP; and the Stevenses' testimony about

14   warning Hertz of the acceleration malfunction with this car are what materially distinguish this

15   case from the valet-parking and parking-lot cases like *Kusmirek v. MGM Grand Hotel, Inc.*,

16   *Stratioti v. Bick*, and *Watkins v. Davis*, which Hertz cites for the proposition that sudden-

---

18   [42] *Id.*

19   [43] *Id.* at 11.

      [44] ECF No. 124 at 19.

20
      [45] *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035–36 (9th Cir. 2005); *see also*
21   *supra* note 38.  Additionally, the Ninth Circuit has held that "the district court may not disregard
      a piece of evidence at the summary[-]judgment stage solely based on its self-serving nature."
22   *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (2015) (holding that "declaration and
      deposition testimony, albeit uncorroborated and self-serving, were sufficient to establish a
      genuine dispute of material fact").  Although a court "can disregard a self-serving declaration
23   that states only conclusions and not facts that would be admissible evidence," *id.*, the Stevenses'
      deposition testimony is heavily factual, not merely conclusory, so this rule does not apply.

acceleration events are unforeseeable.[46]  And they create genuine issues of fact regarding the foreseeability of either driver error or vehicle malfunction that prevent me from now concluding as a matter of law that Hertz had—or didn't have—a duty to keep its customers being struck by another vehicle in its rental-car return lanes on New Year's Day 2017.[47]

### B.  Genuine issues of fact preclude summary judgment on the causation element.

Similar issues of fact preclude me from holding as a matter of law that Hertz's conduct was or was not the proximate cause of the accident.  Nevada law defines proximate (or legal) cause as one that, "in natural, foreseeable, and continuous sequence—unbroken by any efficient intervening cause—produces the injury complained of and without which the result would not have occurred."[48]  So, if a new, unforeseeable cause intervenes and brings about "the final catastrophe," then the "result must be held too remote to" support a negligence claim.[49]

---

[46] *See* ECF No. 124 at 5–7 (citing *Kusmirek v. MGM Grand Hotel, Inc.*, 73 F. Supp. 2d 1222, 1224 (D. Nev. 1999); *Stratioti v. Bick*, 704 F.2d 1052 (8th Cir. 1983); *Watkins v. Davis*, 308 S.W. 906 (Tex. Civ. App. 1957)).

[47] *Anderson v. Baltrusaitis*, 944 P.2d 797, 799–800 (Nev. 1997) (reversing grant of summary judgment after finding, *inter alia*, "that genuine issues of material fact exist concerning respondent's duty to appellant" because "it cannot be said that respondent [motorist] could not have anticipated pedestrian traffic at that intersection"); *accord Merluzzi v. Larson*, 610 P.2d 739, 742 (Nev. 1980) ("Certainly, reasonable minds often may differ as to whether a risk of harm reasonably should have been foreseen, and the issue should generally be submitted to the trier of fact."); *see also Long v. MGM Grand Hotel, LLC*, 381 P.3d 635 (unpublished) (Nev. 2012) (reversing grant of summary judgment in negligence case because "genuine issues of material fact remain[ed] as to whether [a third-party] attack was foreseeable (as it relates to duty), and thus, whether MGM had a duty to prevent it.").

[48] *Payo*, 403 P.3d at 1279 (quoting *Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 101 P.3d 792, 797 (Nev. 2004)) (cleaned up); *accord Van Cleave v. Kietz-Mill Minit Mart*, 633 P.2d 1220, 1221 (Nev. 1981).

[49] *Van Cleave*, 633 P.2d at 1221.

10

Hertz argues that "the sudden acceleration of the vehicle was an unforeseeable, intervening cause" that cuts of its liability for this accident.[50]  But if the jury believes that Mrs. Stevens called Hertz and reported an acceleration defect *and* concludes the accident happened because of that malfunction, proximate cause could be established.  A "defendant must be able to foresee that his negligent actions may result in harm of a particular variety to a certain type of plaintiff"; it need not "foresee the extent of the harm, or the manner in which it occurred."[51]  If the accident occurred because of a mechanical defect that Hertz was on notice of, the jury could reasonably conclude that the injuries to De Freitas and Auler were foreseeable.  Because these foreseeability questions must be determined by the trier of fact, summary judgment is not available to either side.[52]

**III.    Negligent infliction of emotional distress and loss of consortium**

**A.    Domestic partnership**

De Freitas's claims for negligent inflicition of emotional distress (NIED) and loss of consortium turn on the relationship between De Freitas and Auler and whether they were domestic partners under Nevada law.  De Freitas urges that he and Auler should be considered as such for purposes of this litigation.[53]  He alleges that the two "entered into a valid civil union in Brazil" in 2012 and provides testimony from a Brazilian lawyer "confirm[ing that] this is the

---

[50] ECF No. 124 at 15.

[51] *Sims v. Gen. Tel. & Elecs.*, 815 P.2d 151, 157 (Nev. 1991), *overruled on other grounds by Tucker v. Action Equip. & Scaffold Co.*, 951 P.2d 1027 (Nev. 1997); *accord Hammerstein v. Jean Dev. W.*, 907 P.2d 975, 978 (Nev. 1995).

[52] Because this issue of fact alone precludes summary judgment, I do not reach the parties' arguments about whether the evidence regarding the design of the car-rental return lanes creates another viable proximate-cause theory.

[53] ECF No. 126 at 24.

substantial equivalent of a Nevada domestic partnership" according to Nevada statutes.[54]   Hertz questions the authenticity of De Freitas's evidence, arguing that he has "not provided admissible evidence substantiating [his] claim that they should be treated as spouses for purposes of this case."[55]   Hertz asserts that the English translation of the document that De Freitas offers to support his and Auler's legal relationship "does not indicate that it was provided by a Nevada Certified Court Interpreter" and that the declarations of De Freitas and the Brazilian lawyer "lack foundation and should be disregarded, as neither qualifies as an expert concerning Brazilian civil unions."[56]

In Nevada, "[a] legal union of two persons, other than a marriage as recognized by the Nevada Constitution, that was validly formed in another jurisdiction, and that is substantially equivalent to a domestic partnership . . . must be recognized as a valid domestic partnership in this [s]tate regardless of whether the union bears the name of a domestic partnership or is registered in this [s]tate."[57]   De Freitas's declaration constitutes sufficient, unrefuted evidence to show that his Brazilian civil union "required them to be treated as if they were husband and wife" and that all of the required elements are met for his relationship to be considered a domestic partnership in Nevada: he and Auler "were not blood related, not otherwise civilly contracted or married[,] and they lived together."[58]   Nevada doesn't "equate[] a civil union with marriage."[59]   So in finding that De Freitas's and Auler's relationship was equivalent to a

---

[54] *Id.* (citing Nev. Rev. Stat. §§ 122A.100, 122A.200, 122A.500).

[55] ECF No. 130 at 19.

[56] *Id.* at 20.

[57] Nev. Rev. Stat. § 122A.500.

[58] ECF No. 126 at 24.

[59] *LaFrance v. Cline*, 477 P.3d 369 (Nev. 2020) (unpublished).

domestic partnership under Nevada law, I am not concluding that they were married—merely that their civil union under Brazilian law meets Nevada's statutory requirements for a domestic partnership and that it will be so recognized for purposes of this litigation.[60]

Hertz's attack on De Freitas's evidence of the Brazilian civil union as unauthenticated is based on outdated summary-judgment standards. The old rule, as reflected in *Orr v. Bank of America*, was that "unauthenticated documents [could not] be considered in a motion for summary judgment."[61]  But *Orr* was decided in 2002 and interpreted Federal Rule of Civil Procedure 56 before its 2010 overhaul. The 2010 amendment "eliminate[d] the unequivocal requirement" that evidence must be admissible in its present *form* in order to be considered at summary judgment.[62]  The rule now mandates only that the *substance* of the proffered evidence be admissible at trial, so De Freitas needed to demonstrate merely that his evidence of the Brazilian civil union could be presented in an admissible form; he didn't need to present it in that form here.[63]  De Freitas met that burden and Hertz has not demonstrated an existence of a genuine issue of material fact to preclude summary judgment on this narrow issue.

### B.    The parties didn't sufficiently brief the merits of these claims.

Hertz also moves for summary judgment on the NIED and loss-of-consortium claims but provides only a modicum of analysis of either one: Hertz states that because De Freitas's "claims

---

[60] *See* Nev. Rev. Stat. § 122A.500 ("[a] legal union of two persons, *other than a marriage*…") (emphasis added).

[61] *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

[62] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).

[63] *Id.*; *accord Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir.), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021) (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (noting that, "at the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). *See also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment.

for [NIED] and loss of consortium are derivative of the negligence claim, failure of [De Freitas's] negligence claim results in failure of these claims as well."[64]  De Freitas also moves for summary judgment on these claims—but on liability only—and his analysis is likewise minimal.[65]  Because the parties' arguments about these claims are wholly derivative of their negligence arguments, and I have found that genuine issues of material fact preclude summary judgment on the negligence claim, the parties' requests for summary judgment on these derivative claims fail, too.  So these two claims proceed to trial with De Freitas and Auler deemed domestic partners.

## IV.  Genuine issues of fact preclude summary judgment on the negligent-entrustment claim.

Hertz next moves for summary judgment on De Freitas's claim for negligent entrustment of a motor vehicle.  It argues that the Graves Amendment, 49 U.S.C. § 30106, "expressly eliminates vicarious liability against lessors of motor vehicles, including rental car companies such as Hertz"[66] and, alternatively, this claim fails because De Freitas "do[es] not allege that the entrustment of the vehicle to [] Stevens was negligent at the time that it occurred" because he "do[es] not allege that Hertz had knowledge of any defect at the time the vehicle was rented to []Stevens."[67]  De Freitas responds that "it is nonsensical to restrict any analysis of alleged negligence to the circumstances when the renter or driver of the car actually was delivered the keys."[68]

---

[64] ECF No. 124 at 17.

[65] ECF No. 126 at 1–2, 24.

[66] ECF No. 124 at 17.

[67] *Id.* at 19.

[68] ECF No. 132 at 17.

The Graves Amendment shields rental-car companies from liability under limited circumstances, stating that

> An owner of a motor vehicle that rents or leases the vehicle to a person . . . shall not be liable . . . by reason of being the owner of the vehicle during the period of the rental or lease, if—(1) the owner . . . is engaged in the trade or business of renting or leasing motor vehicles; and (2) there is no negligence or criminal wrongdoing on the part of the owner."[69]

Hertz is clearly in the business of renting motor vehicles, so the first requirement is met. But whether there was "negligence . . . on the part of" Hertz is genuinely disputed. If Hertz was on notice that the car it rented to the Stevenses was uncontrollably accelerating, yet took no action to prevent them from driving it back to the rental facility on their own, the second prong would fail.[70] So Hertz is not entitled to summary judgment based on the Graves Amendment.

That genuine dispute also prevents me from finding that De Freitas cannot establish his negligent-entrustment claim as a matter of law. "To establish a prima facie case of negligent entrustment, a plaintiff must show two key elements: (1) that an entrustment occurred, and (2) that the entrustment was negligent."[71] Everyone agrees that Hertz entrusted the vehicle to Stevens; only the negligence prong is disputed. Hertz argues that De Freitas can't establish that it knew, at the time that it handed the keys to Stevens, that he was unfit to drive the car, so the second element isn't met. Hertz adds that, even if there were a mechanical defect with the car at the time the vehicle was entrusted to Stevens, it had no reason to be on notice at that time that he couldn't drive it.

---

[69] 49 U.S.C. § 30106.

[70] ECF No. 119 at 10 (third-amended complaint).

[71] *Garcia v. Awerbach*, 463 P.3d 461, 464 (Nev. 2020) (citing *Zugel v. Miller*, 688 P.2d 310, 313 (Nev. 1984)).

15

1    But nothing in these elements limits the entrustment to the moment that the keys are first

2  handed over.  Indeed, in *Mills v. Continental Parking Corporation*, the Nevada Supreme Court

3  noted that "the negligent-entrustment theory may apply where one who has the right to control

4  the car permits another to use it in circumstances where he knows or should know that such use

5  may create an unreasonable risk of harm to others. . . ."[72]  Again, if a call from Mrs. Stevens put

6  Hertz on notice that the car was unsafely malfunctioning, yet took no action to prevent this

7  customer from driving it back to the rental facility on his own, a reasonable jury could find that

8  Hertz knew or should have known that such use would create an unreasonable risk of harm to

9  others.[73]  So Hertz is not entitled to summary judgment based on the timing of the entrustment

10  evidence either.

11  **V.  Punitive damages are not available on this record.**

12    Finally, Hertz seeks to cut off De Freitas's ability to seek punitive damages via summary

13  judgment.  In Nevada, "punitive damages may be awarded when the plaintiff proves by clear and

14  convincing evidence that the defendant is 'guilty of oppression[;] fraud[;] or malice, express or

15  implied.'"[74]  Oppression is "despicable conduct that subjects a person to cruel and unjust

16  hardship with conscious disregard of the rights of the person."[75]  Fraud is "an intentional

17  misrepresentation, deception[,] or concealment of a material fact known to the person with the

18  intent to deprive another person of his or her rights or property or to otherwise injure another

19  person."[76]  And malice, express or implied, is "conduct [that] is intended to injure a person or

20

---

21  [72] *Mills v. Cont'l Parking Corp.*, 475 P.2d 673, 674 (Nev. 1970) (cleaned up).

    [73] ECF No. 119 at 10 (third-amended complaint).

22  [74] *Bongiovi v. Sullivan*, 138 P.3d 433, 450–51 (Nev. 2006) (quoting Nev. Rev. Stat. § 42.005(1)).

23  [75] Nev. Rev. Stat. § 42.001(4).

    [76] *Id.* at § 42.001(2).

despicable conduct [that] is engaged in with a conscious disregard of the rights or safety of others."[77]

De Freitas prays for exemplary damages against Hertz "on all causes of action" for "compromis[ing] safety in [its] pursuit of profit and financial gain" and for "act[ing] with fraud, malice, and oppression and . . . engag[ing] in despicable conduct in conscious disregard or the rights and safety of others."[78]  He offers two theories for such an award: (1) Hertz widened the lanes in the car return area and did not place sufficient traffic-control barriers—all for financial reasons; and (2) Hertz refused to replace a dangerously malfunctioning vehicle.  Hertz argues that the evidence simply cannot support a punitive-damages award under Nevada law.

No evidence that supports De Freitas's lane-widening theory even approaches fraud, malice, or oppression, let alone clear and convincing proof of it.  The refusal-to-address-the-report-of-a-malfunctioning-vehicle theory fares better.  It's not fraud by any stretch, and the Nevada Supreme Court has held that "refusing to repair or replace an unsafe [rental] vehicle" on far more compelling facts isn't oppression.[79]  But a reasonable jury could conclude that Hertz's employee's ignoring of the company's standard operating procedure for a "vehicle accelerat[ing] by itself"[80] was despicable conduct, engaged in with a conscious disregard for the safety of others.

That, however, is not enough.  When the target of punitive damages is a corporation, and the implied malice comes from an employee, Nevada law prescribes the circumstances under

---

[77] *Id.* at § 42.001(3); *see also Countrywide Home Loans v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008).

[78] ECF No. 119 at 7, 11 (third-amended complaint).

[79] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26–27 (Nev. 1998).

[80] ECF No. 86-1 at 2 (SOP 244A19, Accelerator Problems).

which the employee's conduct can be attributable to the corporation for punitive-damages purposes.  NRS 42.007, captioned in part "Limitations on liability by employer for wrongful act of employee," permits an employee's conduct to be imputed to the employer if a corporate "officer, director, or managing agent" (1) "had advance knowledge that the employee was unfit for" the job and hired her "with a conscious disregard of the rights or safety of others," (2) expressly authorized or ratified the wrongful act, or (3) "is personally guilty of oppression, fraud, or malice. . . ."[81]  Even assuming that Mrs. Stevens's malfunctioning-accelerator call to Hertz happened as she claims, there is no evidence in this record about who the Hertz employee was on the other end of that call.  As a result, De Freitas cannot establish any of the NRS 42.007 requirements for holding Hertz liable for that employee's implied malice.  So Hertz is entitled to summary judgment on exemplary damages, and the jury will not receive a punitive-damages instruction.

## Conclusion

IT IS THEREFORE ORDERED that the cross motions for summary judgment **[ECF Nos. 124, 126] are GRANTED in part and DENIED in part**:

- Hertz's motion is granted as to the issue of punitive damages, and
- De Freitas's motion is granted as to the domestic partnership between himself and Auler, which gives him standing to pursue his derivative claims.
- The motions are denied in all other respects.  The case proceeds to trial on the negligence, negligent-entrustment, NIED, loss-of-consortium, and wrongful-death claims, without the ability to seek punitive damages.

---

[81] Nev. Rev. Stat. § 42.007(1).

18

IT IS FURTHER ORDERED that this case is **REFERRED to the magistrate judge for a mandatory settlement conference** between De Freitas and Hertz.  Their deadline for filing the proposed joint pretrial order is stayed until 10 days after the settlement conference, should this case not resolve.

_____
U.S. District Judge Jennifer A. Dorsey
September 16, 2022