# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Carlos Alberto Rodrigues De Freitas, individually and as administrator of Isabel Aparecida Auler's estate

       Plaintiff

v.

The Hertz Corporation,

       Defendant

Case No.: 2:18-cv-01522-JAD-BNW

**Order Denying Motion to Bifurcate Trial, Granting in Part and Denying in Part Motions in Limine, Granting Defendant's Motions for Excess Pages, and Setting *Daubert* Hearing**

[ECF Nos. 157, 158, 161, 162, 175]

       This tort action arises from a collision in the Hertz rental-car-return area at the Las Vegas airport on New Year's Day 2017. While returning a car, Hertz customer Robert Stevens struck Carlos Alberto Rodrigues De Freitas and his late domestic partner Isabel Aparecida Auler. De Freitas brings this suit on behalf of both himself and Auler's estate. He and his experts generally theorize that the design of the return area was a proximate cause of the collision, while Hertz and its experts generally contend that Stevens confused the gas pedal for the brake and that the return area's design was not the culprit. De Freitas settled with Stevens, and last year I denied in part De Freitas and Hertz's cross motions for summary judgment.[1]

       With trial approaching, Hertz moves to bifurcate the liability and damages phases, arguing that the evidence for each phase is distinct and that the extent of Auler's injuries will bias the jury as to Hertz's liability.[2] The parties also filed omnibus motions in limine, seeking to preclude various evidence as irrelevant or prejudicial and to exclude expert testimony.[3]

---

[1] ECF No. 145 at 6, 18.

[2] ECF No. 157 at 1.

[3] ECF No. 158; ECF No. 162.

**I deny Hertz's bifurcation motion** because I find that there is significant overlap between the evidence on liability and damages and that the potential for prejudice does not warrant splitting the trial into two parts.

**I grant Hertz's requests to enlarge page limits** and consider the entirety of its motion-in-limine briefing.  I then grant in part and deny in part the motions in limine and defer ruling on some of the expert-related issues for a *Daubert* hearing the day before trial begins.  The net result of these rulings is that **the following evidence, opinions, and argument are excluded**:

1. The opinions of the plaintiff's experts Gary Presswood and Joseph Cohen as to rental-car-industry standards for lane width and Hertz's compliance with them.

2. Opinions about the adequacy of Hertz's employee training.

3. Presswood's opinions about possible alternate designs for the Hertz rental-car-return area.

4. Evidence or argument that the litigation has affected De Freitas's health.

5. Post-death hedonic damages for Auler.

6. Opinions that Hertz's data management was negligent or contributed to the subject incident.

7. Opinions or argument that Hertz's noncompliance with its own policies or procedures was negligence per se.

8. Hertz expert Jeffrey Jarvis's opinions about how the accident happened, what caused it, or how the accident could have been prevented.

9. Hertz expert Jerry Marcus's opinions about (a) pedal confusion and (b) what happened during the accident, what caused it, or what could have prevented it.

10. Hertz expert Douglas Young's rebuttal opinion that reduction in lane width would not

have prevented the subject incident.

11. Hertz expert David Krauss's rebuttal of Cohen's lane-design-related opinions.

12. Causation opinions from Officer Solomon.

**At the *Daubert* hearing on Monday, May 22, 2023, at 1:30 p.m., the evidence-proponents must provide an offer of proof** (by putting on the targeted, succinct testimony of their proposed expert), and the opposing party may conduct limited voir dire, **on these narrow issues**:

1. The basis and methodology for plaintiff's expert <u>Gary Presswood</u>'s opinion that the accident would have had less serious effects had the lanes been just ten-feet wide;

2. The factual and methodological basis for plaintiff's expert <u>Thomas Brannon</u>'s opinions about possible alternate designs for the Hertz rental-car-return area; and

3. Defense expert <u>Jerry Marcus</u>'s qualifications to offer opinions about the industry's design standards, or Hertz's compliance with them, or to refute plaintiff's experts' opinions on rental-car-return facility design, and the principles and methods upon which he would offer such opinions.

## Discussion

**A.    Trial bifurcation is not warranted.  [ECF No. 157]**

Hertz seeks to bifurcate the jury trial into separate liability and damages phases.[4]  Federal Rule of Civil Procedure 42(b) authorizes courts to order a separate trial for any claim when separation is in the interest of judicial economy, will further the parties' convenience, or will

---

[4] ECF No. 157 at 1.

prevent undue prejudice.[5]  Bifurcation is appropriate to, for example, "avoid a difficult question by first dealing with an easier, dispositive issue or to avoid the risk of prejudice."[6]  District courts have broad discretion over whether to bifurcate damages from liability.[7]

The main thrust of Hertz's argument is that separating the liability and damages determinations will promote judicial economy and reduce juror confusion because "[t]he issues of liability and damages . . . are completely separate . . . with completely different witnesses."[8]  Hertz posits that separating the issues would also benefit the parties because resolution at the liability phase would save the parties from having to call in "two-thirds of [the] witnesses and experts"—some of whom have to be flown in from Brazil—to testify to damages.[9]  Hertz also contends that splitting the trial will reduce the risk of prejudice to Hertz at the liability phase in light of Auler's "significant brain injuries and inability to care for herself following the incident."[10]

None of these rationales justifies bifurcation.  As De Freitas points out, the liability and damages evidence is intertwined because his medical experts will opine on both causation (specifically that Auler's death was an aftereffect of the injuries she suffered) and damages (the extent of Auler's injuries).[11]  Hertz's attempt to frame causation as distinct from liability[12] is

---

[5] Fed. R. Civ. P. 42(b).

[6] *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016) (internal citation omitted).

[7] *Id.*

[8] ECF No. 157 at 11, 14–15.

[9] *Id.* at 16.

[10] *Id.* at 13–14.

[11] ECF No. 167 at 3–4.

[12] ECF No. 177 at 7–8.

inconsistent with Nevada law.[13]  Also, as De Freitas argues[14] and despite Hertz's contention to the contrary,[15] the extent of damages is relevant to both liability and damages for the negligent-infliction-of-emotional-distress claim, as De Freitas must prove "severe or extreme emotional distress" to establish liability on that claim.[16]  As the Ninth Circuit has recognized, "separat[ing] the trial of the liability and damages issues" in cases involving emotional-distress claims like the one in this case "would therefore tend to create confusion and uncertainty."[17]  So bifurcation will not promote judicial economy or help the jury understand the issues here.

Nor will it aid the parties or reduce prejudice.  Though the jury may sympathize with De Freitas in light of Auler's injuries and death,[18] that is not the type of inflammatory issue that requires bifurcation.[19]  Plus, any potential prejudice can be mitigated with appropriate jury instructions[20] and limitations on any evidence that is substantially more prejudicial than probative under Federal Rule of Evidence 403.  And, as De Freitas argues, bifurcation may seriously inconvenience his Brazil-based witnesses.[21]  So I deny Hertz's bifurcation motion.

---

[13] *Yamaha Motor Co., U.S.A. v. Arnoult*, 955 P.2d 661, 664 (Nev. 1998) ("To establish a prima facie case of negligence or strict tort liability, a plaintiff must satisfy the element of proximate causation.").

[14] ECF No. 167 at 4.

[15] ECF No. 177 at 8–9.

[16] *Shoen v. Amerco, Inc.*, 896 P.2d 469, 476 (Nev. 1995).

[17] *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 511 (9th Cir. 1989) (internal quotations omitted), *as amended on denial of reh'g and reh'g en banc* (Sept. 19, 1989).

[18] ECF No. 157 at 14.

[19] *See, e.g.*, *Est. of Diaz*, 840 F.3d at 603 (mandating a new trial "[b]ecause the district court abused its discretion in refusing to bifurcate the compensatory damages phase (thereby allowing in this unduly prejudicial evidence of drugs and gangs)").

[20] ECF No. 167 at 6; *see Price v. Kramer*, 200 F.3d 1237, 1252 (9th Cir. 2000) (recognizing that prejudice can be cured by prompt and effective jury instructions).

[21] *Id.* at 5.

**B.      Hertz's motions to file excess pages are granted.  [ECF Nos. 161, 175]**

Hertz's omnibus motion in limine and response to De Freitas's omnibus in-limine motion exceed the 24-page limit in Local Rule 7-3(b),[22] so Hertz asks for permission to do so.[23]  Under Local Rule 7-3(c), motions for excess pages may be granted "only upon a showing of good cause."[24]  Hertz argues that it "tried its best to keep the [o]mnibus [m]otion in [l]imine to as few pages as possible" but went beyond 24 pages because "this case has too many important evidentiary issues" and required fifteen motions in limine to address three liability experts and other issues.[25]  It argues that its response to De Freitas's motion required more space because, though the plaintiff's motion did not itself exceed the page limit, De Freitas "made a lot of assertions with minimal to no evidence or citation," leaving Hertz "to . . . explain[] certain issues and opinions."[26]  De Freitas responds that Hertz's motion does not "address[] truly evidentia[ry] issues but rather invite[s] the court to weigh the evidence or constitute[s] belated dispositive motions"[27] and its opposition "waffle[s] on . . . without addressing the key evidentiary points."[28]  Alternatively, De Freitas requests oral argument on the substantive motions if the page-limit motions are granted.[29]

---

[22] L.R. 7-3 ("All other motions, responses to motions, and pretrial and post-trial briefs are limited to 24 pages, excluding exhibits.").

[23] ECF Nos. 161, 175.

[24] L.R. 7-3.

[25] ECF No. 161 at 3.

[26] ECF No. 175 at 2.

[27] ECF No. 172 at 1–2.

[28] ECF No. 179 at 2.

[29] ECF No. 172 at 2; ECF No. 179 at 3.

I grant both of Hertz's motions.  Though its briefs could have been more concise, Hertz has shown good cause for its additional pages due to the complexities involved in the more than twenty evidentiary motions at issue and my order requiring the parties to file all of their in-limine requests in a single, omnibus motion.  And while De Freitas kept to the 24-page limit in his opposition and omnibus motion, he could have requested to enlarge his briefing just as Hertz did. Regardless, I find that he fails to show that he was prejudiced by the disparity in page count and that oral argument is unnecessary.  So I deny De Freitas's request for oral argument.

**C.    Hertz's motions in limine are granted in part and denied in part.  [ECF No. 158]**

"A motion in limine is a procedural mechanism [that is used] to limit in advance" of trial the scope of "testimony or evidence in a particular area" that will be permitted at trial.[30]  Though not explicitly authorized by the Federal Rules of Evidence, the practice of ruling in limine on evidentiary issues is based on the "district court's inherent authority to manage the course of trials."[31]  "However, in[-]limine rulings are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial."[32]

**1.    Hertz's MIL #1 (regarding medical bills) is denied.**

Hertz seeks to exclude evidence that the "reasonable value" of Auler's medical costs exceeds the amount that was "actually billed."[33]  Its request stems from the fact that, even though Auler's health insurer paid her costs at the reduced rate negotiated between the hospital and the insurer, the plaintiff's experts opine that the actual value of those services (and thus the value of

---

[30] *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009).

[31] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

[32] *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (italics emphasis omitted) (citing *Luce*, 469 U.S. 41–42).

[33] ECF No. 158 at 10.

the damages) is four times higher.[34]   The Supreme Court of Nevada has held that, under the collateral-source rule, "[e]vidence of payments showing medical[-]provider discounts, or write-downs, to third-party insurance providers 'is irrelevant to a jury's determination of the reasonable value of the medical services.'"[35]   So I predict that Nevada's High Court would not bar evidence that the discounted rates that Auler's insurer paid do not reflect the reasonable value of medical costs, and I thus deny the motion.[36]

### 2.   Hertz's MIL #2 is granted in part and denied in part, allowing plaintiff to offer only Thomas Brannon to testify about industry standards for rental-car-return lanes.

The plaintiff intends to offer three experts with various opinions that are based on a purported rental-car-industry standard lane width of about ten feet: Gary Presswood, Joseph Cohen, and Thomas Brannon.   Pointing out that none of these witnesses has prior experience related to rental-car companies or return facilities, Hertz moves to preclude their testimony on this topic as speculative, unreliable, and lacking a sound methodology.[37]

Federal Rule of Evidence 702, as construed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, imposes a "gatekeeping role" on the court in assessing whether to admit expert testimony.[38] The *Daubert* gate opens if the expert is qualified and the "expert's testimony both rests on a

---

[34] *Id.* at 11.

[35] *Khoury v. Seastrand*, 377 P.3d 81, 93 (Nev. 2016) (citing *Tri–Cty. Equip. & Leasing v. Klinke*, 286 P.3d 593, 598 (Nev. 2012) (Gibbons, J., concurring)).

[36] *See U.S. Bank, N.A., Tr. for Banc of Am. Funding Corp. Mortg. Pass-Through Certificates, Series 2005-F v. White Horse Ests. Homeowners Ass'n*, 987 F.3d 858, 863 (9th Cir. 2021) (quoting *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011)) (recognizing that because "the [Supreme Court of Nevada] has not addressed squarely, in any published decision," the issue, the court's "role is . . . to 'predict how the state high court would resolve' the question in a published decision").

[37] ECF No. 158 at 15–16.

[38] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

reliable foundation and is relevant to the task at hand."[39]  A witness can be "sufficiently qualified as an expert by knowledge, skill, experience, training, or education," and the testimony is relevant if the "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[40]  The testimony is reliable if it is "based on sufficient facts or data" and "the product of reliable principles and methods" and "the expert has reliably applied the relevant principles and methods to the facts of the case."[41]  Though the court must assess reliability using "appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance, . . . [t]hese factors are nonexclusive, and the trial court has discretion to decide how to test an expert's reliability . . . based on the particular circumstances of the particular case."[42]  These principles apply to both scientific[43] and "technical" or "other specialized" knowledge.[44]

I grant the motion as to Presswood.  Known to this court as primarily a slip-and-fall guy, Presswood "The Accident Expert™" has not been shown by the plaintiff to be "qualified as an expert" in rental-car-return-facility design "by knowledge, skill, experience, training, or education," as Rule 702 requires.  His deposition testimony reveals that his knowledge of rental-car-return lane-width standards was derived from simply reviewing the testimony of Hertz

---

[39] *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (citing *Daubert*, 509 U.S. at 597).

[40] *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (citing Fed. R. Evid. 702).

[41] *Id.* (citing Fed. R. Evid. 702).

[42] *Elosu*, 26 F.4th at 1024 (quoting *City of Pomona*, 750 F.3d at 1043).

[43] *Daubert*, 509 U.S. at 595.

[44] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

witnesses in this case, the Hertz manual, and the previous design of the facility at issue.[45]  No specialized knowledge or skill is necessary to distill that information for the jury or help the jury determine a fact in issue.  So Presswood's testimony in this regard is not "expert" opinion under Rule 702, and he is precluded from offering opinions about, or based on, rental-car-facility lane widths.

I also grant the motion as to Cohen.  A human-factors analyst, Cohen's understanding of rental-car-return lane standards is derived from the same limited library that Presswood's is.[46]  "Prior to" receiving that case-specific information, Cohen had no "expertise, knowledge[,] or training regarding [the] industry standard related to the width of return lanes at a rental[-]car[-]return facility" or even as to "the width of roadways or streets."[47]  He also admitted at his deposition that he didn't even have "training or expertise related to standards of the size of parking lanes, lanes in a parking lot or a parking garage," stating, "No.  I think that would be civil engineering."[48]  So Cohen may not testify at trial about industry-standard lane widths or Hertz's compliance with them.

But I deny the motion as to Brannon.  Although his expertise is not specifically in rental-car-return lanes, the plaintiff has established that Brannon has relevant experience in "cases that involved pedestrian accidents within parking lots" along with "the principles of traffic circulation" and "traffic management."[49]  He teaches transportation engineering and traffic

---

[45] ECF No. 135-10 at 9–10 (Presswood depo).

[46] ECF No. 135-8 at 4–5, 8 (Cohen depo).

[47] *Id*. at 5.

[48] ECF No. 159-8 at 3 (Cohen depo).

[49] ECF No. 135-9 at 5 (Brannon depo).

engineering and has designed parking lots.[50]  And in addition to the information that Presswood

and Cohen reviewed to glean their recent and limited understanding of industry standards,

Brannon "examined plans from several other airport rental-return locations."[51]  The combination

of his more relevant experience and the additional research he conducted for this case qualify

him as an expert under Rule 702 in the industry standards for rental-car-lane widths and permit

him to testify about whether Hertz's design met those standards because the plaintiff has shown

that Brannon's specialized knowledge will help the trier of fact to understand the evidence and

determine a fact in issue.

   3.   **A ruling on Hertz's MIL #3 is deferred for a *Daubert* hearing about Presswood's methodology used to reach his conclusions about how and why things would have been different had the Hertz lanes been just ten-feet wide, but the motion is denied in all other respects.**

   Hertz next moves to preclude these same plaintiff's experts from opining that, had the

lanes been ten-feet wide—or had Hertz employed an alternating-empty-lane design—this

accident would have caused less injury or no injury, arguing that such opinions are "pure

foundationless speculation."[52]  De Freitas responds that Presswood should be permitted to offer

the ten-foot-lane opinion because he performed an accident reconstruction.  But in his

deposition, Presswood acknowledged that he did not perform a "complete" accident

reconstruction.[53]  I find that the record is insufficiently developed to permit me to make this

decision without a *Daubert* hearing about Presswood's methodology used to reach his

conclusions about how and why things would have been different if the Hertz lanes had been just

---

[50] ECF No. 169-5 at 5 (Brannon cv); ECF No. 169-11 at 19 (Brannon depo).

[51] ECF No. 170-5 at 5 (Brannon report).

[52] ECF No. 158 at 27.

[53] ECF No. 159-5 at 5.

1  ten-feet wide.  So I reserve my ruling on the admissibility of Presswood's opinion that the

2  accident would have had less serious effects had the lanes been just ten-feet wide until after a

3  *Daubert* hearing at which De Freitas will need to elicit Presswood's basis and methodology for

4  that opinion, and Hertz will be permitted to voir dire Presswood on those topics.

5          Neither Hertz's motion nor De Freitas's response develops the record as to any expert's

6  opinion that an alternating lane design could or would have reduced or eliminated injury.  The

7  court cannot even tell from this portion of the briefing which of plaintiff's experts intends to

8  offer such an opinion.  So I deny the motion to preclude opinion in this regard because the

9  vagueness of the request on this point makes it impossible for the court to formulate an

10  appropriate in limine order.  But the court emphasizes that this merely means that such opinions

11  are not expressly precluded at this point, not that they will come in.  The plaintiff is reminded

12  that he will be required to lay the foundation for any expert to offer such an opinion at trial.

13

14  ### 4.    Hertz's MIL #4 (to preclude expert opinions that Stevens was confused) is denied.

15          Hertz next moves to preclude Presswood, Cohen, and Brannon from offering opinions

16  that Stevens was confused and that his confusion was caused by various design elements of the

17  rental-car-return area.  Hertz argues that there is no evidence to support the notion that Stevens

18  was confused, so these opinions have no probative value or their value is substantially

19  outweighed by the danger of jury confusion or unfair prejudice.[54]

20          To be sure, evidence of Stevens's confusion is thin—but a reasonable jury could interpret

21  his testimony or the other evidence of his behavior in the rental-car-return area to find that he

22  was confused, and that confusion can supply the basis for the theory that such confusion

23

---

[54] ECF No. 158 at 33.

contributed to the collision.  The weakness of that evidence or any interpretation of it goes to the weight of these experts' opinions and is fodder for a vigorous cross examination, but it does not support exclusion of this opinion testimony.  The motion to exclude the opinions that Stevens was confused is denied.

### 5.    Hertz's MIL #5 (to exclude evidence of other return areas) is denied.

Hertz contends that plaintiff's experts rely on plans and dimensions for and photographs of return lanes at other airport locations to form their opinions about the industry standard for the size of return lanes.[55]  It moves to "preclude [p]laintiffs' counsel and . . . experts from discussing or admitting any such photos or plans into evidence . . . or discussing the designs of other return areas" because "the width of return lanes at other random return locations (some of which are not even Hertz return areas) are completely irrelevant to what happened in this case."[56]  De Freitas counters that the locations are not random and instead relate to the top ten rental-car centers.[57]  I find that, as De Freitas argues,[58] the design of Hertz's and its competitors' rental-car centers at other locations is relevant to (even if not dispositive of) the industry's custom, so I deny this motion.

### 6.    Hertz's MIL #6 (to preclude evidence and argument that Hertz's employees were inadequately trained) is granted.

I grant Hertz's motion to preclude expert opinion on the adequacy of Hertz's employee training because De Freitas has not established that any of his experts are qualified to speak about it.  None of the plaintiff's experts has any apparent skill, training, or experience in rental-

---

[55] *Id.* at 34.

[56] *Id.*

[57] ECF No. 168 at 17.

[58] *Id.*

car operations or employee training.  De Freitas responds that Brannon testified at deposition that

there was no traffic-management training, but the testimony he cites for that proposition merely

states that Brannon didn't see anything in Hertz's training materials he was provided "that truly

addressed traffic management."[59]  De Freitas can point to nothing to support the idea that

Brannon has knowledge, skill, experience, training, or education about rental-car-company

operations or training such that his testimony would assist the jury in any meaningful way.  De

Freitas also says that "Dr. Presswood made clear [that] safety issues as to training are part of the

responsibilities of a licensed engineer,"[60] but that vague statement falls far short of meeting any

of the requirements of Rule 702.  As the plaintiff doesn't identify other evidence that he may

elicit to support this theory, there would be no basis for such an argument.  So I grant motion in

limine #6 and hold that the plaintiff may not offer opinions about the adequacy of Hertz

employees' training.

### 7.   Hertz's MIL #7 (to limit expert evidence of additional alternative designs) is granted as to Presswood and deferred as to Brannon.

In line with its argument on MIL #3, Hertz moves to preclude Presswood and Brannon[61]

from opining that other alternative designs, including "other safety elements" like "jersey

barriers," would have been generally safer than Hertz's design and conformed to industry

standards.[62]  Hertz urges that "none of [p]laintiffs' liability experts have any experience or

---

[59] ECF No. 169-11 at 58, 80–81 (Brannon depo).

[60] ECF No. 168 at 18.

[61] Although Hertz generally asks the court to exclude such testimony from "Plaintiff[']s experts," Hertz mentions only Brannon and Presswood by name in this motion, and it is only for these witnesses that Hertz has developed this argument.  *See* ECF No. 158 at 36–39.  So, to the extent that MIL # 7 was intended to preclude such testimony from Cohen, too, it is denied as inadequately developed.

[62] *Id.* at 36.

knowledge related to rental[-]car[-]return areas" or any "foundation for said opinions."[63]  In

response, De Freitas refers to his argument in opposition to other motions in limine but does not

provide additional reasons why plaintiff's experts are qualified or their methodologies are well

founded on these alternate designs.

De Freitas's inability to establish Presswood's qualification to provide expert testimony

about rental-car industry standards compels me to grant this motion as to Presswood.  Without

that foundation, I cannot find that Presswood's testimony on proposed safer alternative designs

would be the product of reliable principles or methodologies as Rule 702 requires.  So the

plaintiff is precluded from offering the testimony of Presswood about possible alternate designs

for the return area.

I found in ruling on MIL #2 that De Freitas has shown that Brannon is qualified to

provide expert testimony about industry standards for rental-car-return lane widths.[64]  In this

MIL #7, Hertz challenges his qualifications to "offer other possible alternate designs that

could/should have been used by Hertz," arguing, *inter alia*, that he has "no idea what the

industry standard is" or "what elements could be added to the area while still allowing for the

return area to function for its intended purpose.  Hertz argues that Brannon and the plaintiff's

other experts "simply spitball ideas of other *possible* designs that could have been used."[65]  As

an example, Hertz notes that "Brannon discussed possible alternate designs, including the use of

crash cushions, but . . . admits that he does not know if the industry standard requires crash

cushions."[66]  De Freitas responds by claiming that there is no industry standard for such traffic-

---

[63] ECF No. 18 at 36–37.

[64] *See supra* at pp. 10–11.

[65] ECF No. 158 at 38.

[66] *Id.*

control measures and baldly insisting that "Hertz's own experts have been forced to concede" that its design "was unsafe and caused the accident."[67]  And he says that "industry standard does not determine the matter of whether a defendant acted reasonably and within a standard of care."[68]  This suggests that the plaintiff intends to offer expert opinion on a standard of care that is separate and distinct from an industry standard.  But whatever that standard is, it needs to be reliable.  I cannot determine from this vague and conclusory briefing whether the foundation of Brannon's proposed opinions about other alternative designs is based on knowledge, skill, experience, training, or education, nor can I conclude that such opinions would be the product of reliable principles and methods.  So I defer my decision on whether to preclude such testimony for a *Daubert* hearing on those specific topics.

**8.      Hertz's MIL #8 (to exclude the defective-car phone call) is denied.**

Hertz "seeks to preclude argument or testimony that . . . Stevens [or his wife] called Hertz to report that the car was defective prior to the incident occurring, as all parties agree that the car was not actually defective."[69]  De Freitas agrees that the car was in fact not defective, but he argues that the call "placed Hertz on notice" that Stevens "presented a danger when driving the car."[70]  So, as De Freitas argues, the call may be relevant to the negligent-entrustment claim, which Hertz does not address.  I deny the motion to exclude evidence of this call because it is relevant for the reasons that De Freitas points out.  And I reiterate what I told the parties at calendar call: because both sides agree that a vehicle defect was not the cause of this collision, they should consider preparing a stipulation to eliminate that theory from the jury's purview.

---

[67] ECF No. 168 at 18–19.

[68] *Id*. at 18.

[69] ECF No. 158 at 38, 39.

[70] ECF No. 168 at 19.

16

1

**9.     Hertz's MIL #9 (to bar reptile arguments) is denied.**

2

Concerned that the plaintiff's arguments "will tap into a juror's 'reptilian' survival

3  instincts," Hertz asks that I exclude evidence and argument about the "safest" or "best" course of

4  conduct.[71]  But Hertz's request is too vague and broad to warrant prophylactic relief.[72]  As

5  another judge in this district stated in an order that I find persuasive, "[f]ederal courts have

6  hissed at motions based on this [reptilian] theory that seek a broad prospective order untethered

7  to any specific statements [that] the other side will make."[73]  So I deny this motion without

8  prejudice to Hertz's ability to lodge appropriate objections at trial.

9

**10.     Hertz's MIL #10 (to preclude testimony from plaintiff's proposed psychiatric
10          expert Carol Lieberman) is denied.**

11

Dr. Carol Lieberman performed two independent psychiatric evaluations of De Freitas.

12  Hertz moves to bar her opinions espoused in the second evaluation because "Lieberman did not

13  prepare a supplemental expert report reflecting what she did during [the second] examination."[74]

14  Hertz relies on Rule 26(a)(2), which requires expert witnesses to provide reports including "a

15  complete statement of all opinions" and requires each party to "supplement or correct its

16  disclosure . . . in a timely manner if the party learns that in some material respect the disclosure

17

18

19  [71] ECF No. 158 at 40–41.

20  [72] *See* ECF No. 152 at 13 ("The parties are cautioned that vague requests based on speculative
    issues, like requests to generally preclude improper attorney arguments, violations of the golden
21  rule, or irrelevant evidence will be flatly denied.  The court intends to follow the rules of
    evidence and procedure at trial and expects the parties to do the same.  Motions seeking little
22  more than an order enforcing a rule waste the court's time and the parties' resources.").

23  [73] *Aidini v. Costco Wholesale Corp.*, No. 2:15-cv-00505-APG-GWF, 2017 WL 10775082, at *1
    (D. Nev. Apr. 12, 2017) (collecting cases).

    [74] ECF No. 158 at 43.

1 . . . is incomplete or incorrect."[75]  Under Rule 37, if the party fails to comply with those

2 requirements, that party "is not allowed to use that information or witness to supply evidence . . .

3 at a trial, unless the failure was substantially justified or is harmless."[76]  De Freitas argues that

4 the parties agreed that the "experts may offer at trial any opinion given not only in their written

5 reports but also in their depositions" and that Hertz "suffered no prejudice" because "Lieberman

6 simply supplemented her initial report . . . verbally during her deposition" and "provid[ed] her

7 full notes" of the second examination.[77]  Because Hertz does not address whether these

8 explanations show substantial justification or how it was harmed, I deny this motion.

9

### 11. Hertz's MIL #11 (to preclude the effect of the litigation on De Freitas's health) is granted.

10

11        Hertz moves to preclude the plaintiff from introducing evidence or argument that the

12 litigation has affected De Freitas's health.[78]  De Freitas concedes that "litigation-induced stress is

13 not ordinarily recoverable" but contends that this case poses an "exception to that general

14 rule."[79]  I find that the conduct that De Freitas points to—an expert disputing his causation

15 theory and conducting additional discovery in light of Auler's death[80]—does not warrant an

16 exception and would be substantially more prejudicial than probative.  So I grant this motion.

17

18

19

20 _____

[75] Fed. R. Civ. P. 26(a)(2), (e).

21 [76] Fed. R. Civ. P. 37(c).

[77] ECF No. 168 at 21.

22 [78] ECF No. 158 at 44.

23 [79] ECF No. 168 at 21–22.

[80] *Id.* at 22.

1    **12.    Hertz's MIL #12 (to limit lay testimony about lost wages) is denied.**

2        Though Hertz worries that De Freitas's friend Lucas Da Silva will testify about De

3    Freitas's lost wages without foundation or personal knowledge, "[p]laintiffs concede that he may

4    only testify as to matters within his personal knowledge and may not unduly speculate as to what

5    Mr. De Freitas has earned, if he has no actual knowledge."[81]  So it appears that this motion

6    needlessly sought a court ruling on an uncontested issue.  Plaintiff is expected to abide by his

7    concession and steer clear of this impermissible topic.  The court will entertain Hertz's

8    objections at trial if he does not.

9    **13.    Hertz's MIL #13 (Auler's post-death hedonic damages) is granted.**

10       Hertz next asks the court to preclude the plaintiff from seeking post-death hedonic

11   damages for Auler.  De Freitas acknowledges that "a pain[-]and[-]suffering claim may not be

12   based on post[-]death hedonic damages[]," so I grant this motion even though it would have been

13   more appropriate for a stipulation, given the parties' apparent agreement.[82]  The plaintiff may not

14   introduce "argument or opinions regarding any loss of enjoyment of life . . . related to Ms.

15   Auler[] following her death."[83]

16
     **14.    MIL #14 (to preclude argument that Hertz's inability to search a database
17           for similar incidents was negligence) is granted in part and denied in part.**

18       Hertz contends that "[a]ny arguments that [it] was negligent by not being able to filter

19   incident reports specifically by incidents at the return areas would be a red[-]herring argument in

20   an attempt to confuse the jury and unfairly prejudice [it,]" so it seeks to exclude that argument.[84]

21   _____

22   [81] *Id.* at 22.
     [82] *Id.*

23   [83] ECF No. 158 at 47.
     [84] *Id.* at 50.

Hertz explains that it maintains incident reports and searched its database for incidents similar to the one at issue in this case but that "the database of incident reports does not have a specific parameter that allows for searches limited to incidents occurring at only the return lanes of Hertz['s] facilities.[85]  De Freitas argues that his "experts opine that accurate accident reporting and data management is essential to safety" and that "Hertz's accident data is wholly unreliable."[86]  Though De Freitas's brief does not fully explain the connection between Hertz's ability to filter its data a certain way and its negligence in this case, his theory appears to be that Hertz's poor data management may have hindered its ability to monitor and prevent incidents like the one at issue in this case.[87]

        To the extent that De Freitas intends to offer opinion testimony that Hertz's poor data management contributed to this incident, I grant the motion.  Plaintiff has pointed to nothing in this record that would support such a tenuous causation theory.  Nor has he shown that any expert is qualified to offer an opinion about rental-car-operator procedures, particularly on data maintenance.  Brannon, who is the most likely plaintiff's expert to have relevant experience on this point, conceded at his deposition that he knows nothing about how such companies track their accident data:

> Q.    Do you know if any other rental car companies keep track of data related to accidents that specifically occur in their return areas?
>
> A.    I don't know.

---

[85] *Id.* at 49–50.

[86] ECF No. 168 at 22.

[87] *See* ECF No. 169-11 at 63, 147:16–14:8 (the plaintiff's expert opining that "[b]ecause if you've got a pattern of fender[]benders, that can be indicative that you're going to get worse accidents because you've got a situation in which people are, for whatever reason, running into each other" and "[s]ooner or later, there'll be somebody between those two people that are running into each other").

1    Q.    Do you know if the industry standard requires that?

2    A.    I do not know.

3    Q.    Do you know . . . if there's an industry standard related to rental car companies as to traffic management procedures that must be in place to meet an industry
4          standard at a rental car return facility.

5    A.    I do not know of an industry standard specifically for that.[88]

6  So De Freitas may not offer opinion testimony that Hertz's data management was negligent or

7  somehow contributed to the subject incident.  But, in the event that a Hertz witness testifies that

8  Hertz had no record of any similar accident or incident in the rental-car-return area, this ruling

9  does not prohibit De Freitas from inquiring into Hertz's data-management procedures or

10 processes to refute, rebut, or impeach.

11
         **15.    Hertz's MIL #15 (to bar opinion that Hertz's noncompliance with its own
12              policies or procedures was negligence per se) is granted.**

13         Finally, Hertz requests that I bar argument or opinion that its "failure to comply with its

14 policies and procedures, guidebooks, or manuals . . . means that Hertz is per se negligent."[89]  De

15 Freitas counters that Hertz's noncompliance is "highly relevant to the question of [its]

16 negligence."[90]  But Hertz does not seek to bar evidence of its policies or its noncompliance with

17 those policies; it instead seeks to bar argument that such nonconformance signals that "it must

18 have been negligent."[91]  Because the plaintiff has not provided any legal authority for the notion

19 that evidence of noncompliance with a corporate policy or procedure is negligence per se, I grant

20 this narrow motion.

21 _____

22 [88] ECF No. 159-10 at 16–17 (Brannon depo).
   [89] ECF No. 158 at 50.

23 [90] ECF No. 168 at 24.
   [91] ECF No. 158 at 50.

**C.      Plaintiff's motions in limine are granted in part and denied in part.  [ECF No. 162]**

**1.      De Freitas's MIL #1 (to exclude Dr. Pitchon's opinion on the cause of Auler's death) is denied.**

For his pretrial evidentiary requests, De Freitas first moves to exclude the opinion of Hertz's medical expert Dr. Howard Pitchon that Auler's death was not an aftereffect of the accident.[92]  Dr. Pitchon opines that "the[] recurrent urinary[-]tract infections" that caused Auler's death "were related to the chronic infection of the urinary tract that developed" in connection with her "5/15/2017 [hospital] admission" and were not "directly related to her [traumatic brain injury] or other injuries from her accident."[93]  De Freitas argues that this "wholly exotic" and "junk opinion" is from an "unqualified expert" who did "not read key records" and is contradicted by the death certificate.[94]  I find, however, that the plaintiff's attacks are appropriate fodder for cross examination (and potentially more specific objections at trial) but do not merit wholesale pre-trial exclusion of this causation opinion.

De Freitas primarily contends that Dr. Pitchon's opinion is speculative because, though his theory depends on Auler "not having contracted bronchial pneumonia" until after her May 1, 2017, hospital admission, "[h]e admits that he cannot say whether she caught it during [that] admission or not."[95]  Yet, as Hertz notes, Dr. Pitchon does not have to be free from doubt to render an opinion to a reasonable degree of medical certainty.[96]  And, contrary to plaintiff's hyperbolic argument that Dr. Pitchon's opinion is based on speculation, the doctor in fact

---

[92] ECF No. 162 at 4.

[93] ECF No. 73-2 at 9.

[94] ECF No. 162 at 5.

[95] *Id.* at 7.

[96] ECF No. 173 at 10.

provides a basis for his theory: Auler's medical records indicate that her lungs were clear during that stay.[97]  That some evidence may contradict his opinion and some other experts disagree with it goes to the weight of his testimony, not its admissibility,[98] and this court's gatekeeping role is "to screen the jury from unreliable nonsense opinions," not to "exclude opinions merely because they are impeachable."[99]  And though Dr. Pitchon appears to have based his opinion on a summary of the records (rather than the full records), I find that his opinion is based on "sufficient facts [and] data."[100]  Any voids or insufficiencies in the foundation of his opinions can be attacked on cross examination, and the jury can determine how much weight to give them.

I also find that Hertz has established that Dr. Pitchon is qualified to render his causation opinion.  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."[101]  While plaintiff correctly points out that Dr. Pitchon is not a neurologist,[102] he has practiced medicine for 40 years with an expertise in infectious disease, served as a teaching Attending in the Department of Infectious Disease at Cedars-Sinai" since 1985, and previously was the Clinical Chief of

---

[97] ECF No. 163-2 at 11–12 (22:23–23:1).

[98] ECF No. 162 at 7–8; *see City of Pomona*, 750 F.3d at 1044 ("The test 'is not the correctness of the expert's conclusions but the soundness of his methodology.' . . .  Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge.  A district court should not make credibility determinations that are reserved for the jury.") (quoting *Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010), as amended (Apr. 27, 2010)).

[99] *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc*., 738 F.3d 960, 969 (9th Cir. 2013).

[100] Fed. R. Evid. 702(b).

[101] *City of Pomona*, 750 F.3d at 1044 (quoting *Daubert*, 509 U.S. at 565).

[102] ECF No. 162 at 8.

Infectious Disease at that hospital.[103]  He is board certified in internal medicine and infectious

disease, and he deals with the issue Auler was facing (neurogenic bladder) "all the time."[104]  So

the opinions he offers here appear to be squarely within his area of expertise.

That Dr. Pitchon's opinion conflicts with the conclusions of the Brazilian doctors who

prepared Auler's death certificate is also not a valid basis to exclude it, and the plaintiff has not

offered any authority for such a proposition.  It is irrelevant that Dr. Pitchon "has no idea of the

standard of care" that these doctors followed in making their diagnosis or that Dr. Pitchon "has

no recollection of the specifics of the death certificate" or "the rules and regulations relating to

Brazilian death certificates."[105]  His conclusions were reached—and could be reached—

separately from those opinions and are not reliant upon them.  So I deny the motion to exclude

Dr. Pitchon's causation opinion.

### 2.  De Freitas's MIL #2 (to exclude rental-car expert Jarvis's opinions) is granted in part and denied in part.

De Freitas next seeks to exclude Hertz's proposed rental-car design expert, architect

Jeffrey Jarvis.[106]  He contends that Jarvis is "unqualified to opine on issues of traffic

management, which is the critical issue here" and the accident because his only knowledge

comes from "reports he read" and his initial report "gives no opinion whatsoever as to the

specifics of the case, let alone the actual accident."[107]  De Freitas adds that Jarvis's methodology

is "wholly suspect" because "he misinterpreted traffic data" and "makes comparisons with

---

[103] ECF No. 173-2 at 3.

[104] *Id.* at 1; ECF No. 163-2 at 22 (35:23–24).

[105] ECF No. 162 at 8.

[106] *Id.* at 10.

[107] *Id.* at 11–12.

airport[-]departure curbs but has no data to make these comparisons."[108]  Hertz counters that

Jarvis is qualified based on his "over 20 years' experience in providing planning, design[,] and

construction administration services for . . . rental[-]car facilities similar to the Las Vegas

location."[109]  His methodology is sound, Hertz argues, because Jarvis "performed a site

inspection of the return area" and "reviewed . . . the traffic report with witness statements and

photos, the black box report for the incident, the recorded statement of the driver who caused this

accident . . . , video surveillance from the incident, design documents related to the area at issue,

the deposition transcripts of Hertz employees . . . , and Hertz's designated 30(b)(6) witnesses

related to design and operations."[110]

        I grant the motion in part.  Hertz has not shown that Jarvis is qualified to opine about

accident causation, which includes how the accident transpired, what caused it, or how it could

have been prevented.  Jarvis is not an expert in human factors, a biomechanical expert, an

accident-reconstruction expert, a traffic engineer, or a professional engineer.[111]  Before this case,

he had never been retained as an expert witness.[112]  As he explains it, his "expertise is in rental[-

]car facilities,"[113] specifically their design.[114]  At his deposition, he made it clear that he was "not

giving any opinion at all as to any kind of traffic management or any kind of matter in which

cars were directed on the day of the accident."[115]  He did not know the details of the accident

---

[108] *Id.* at 14.

[109] ECF No. 173 at 16.

[110] *Id.* at 17.

[111] ECF No. 163-11 at 5–6 (Jarvis depo).

[112] *Id.* at 7.

[113] *Id.* at 6.

[114] *Id.* at 9, 40.

[115] *Id.* at 18.

scene, the positioning of the cars, how wide the gap between the cars was, or the speed of the impact.[116]  "Everything that [he] know[s about the accident] is in the reports of the accident reports, and [he] rel[ies] on them" alone.[117]  Hertz has not shown that Jarvis is qualified to provide an opinion about the cause of this incident (and thus how it could have been prevented, because a prevention opinion would require a knowledge of how the incident occurred) or that such an opinion would be the product of reliable principles or methods to aid the jury in its pursuit of the truth.  So I grant the motion to the extent that the plaintiff seeks to preclude Jarvis from testifying about how the accident happened, what caused it, or how this accident could have been prevented.

But I deny this motion #2 in all other respects.  An overarching problem with this motion is plaintiff's attempt to label the central issue in this case with the vague term "traffic management" and then claim that Jarvis must be excluded because he's not a traffic-management expert.  This semantic effort is unpersuasive.  The record overwhelmingly establishes that Jarvis is well qualified to supply testimony about rental-car-facility design and the industry standards that apply to such design.  Jarvis's knowledge, skill, and experience is squarely relevant to the issues here.  He has 20 years of experience in providing planning, design, and construction-administration services for rental-car facilities like the one at issue here.[118]  He established his knowledge of industry standards and his ability to testify to Hertz's compliance with those standards, as well as the feasibility, reasonableness, and appropriateness of alternative rental-car-return design proposals.

---

[116] *Id.* at 26–27.

[117] *Id.* at 41.

[118] ECF No. 163-7 at 2 (Jarvis initial report).

The timing of his supplemental report does not compel the preclusion of any of the opinions for which he has an appropriate basis under Rule 702 either.  De Freitas argues that Jarvis's supplemental report, prepared after his November 14, 2019, deposition was untimely because it contains "brand new opinions."[119]  Hertz responds that Jarvis was merely updating his report in light of new information (i.e., plaintiff's experts' deposition testimony) as required by Federal Rule of Civil Procedure 26(e).[120]  Because it appears that the supplemental report addresses only the additional opinions provided by plaintiff's experts at their depositions—though it is broader because that testimony was more extensive than the experts' reports—it is not subject to exclusion under the rules.

In sum, the motion to exclude the opinion testimony of Jarvis is granted in part and denied in part.  At trial, Hertz may not present Jarvis's opinions about what happened during the accident, what caused it, or what could have prevented it.  But the motion is denied in all other respects.

### 3.    De Freitas's MIL #3 (to exclude Hertz's parking consultant Marcus) is granted in part and deferred in part.

Like Jarvis, Hertz's parking expert, Jerry Marcus, offers a wide range of opinions—on the causation of the accident, rental-car industry standards, and the feasibility or propriety of the alternate return-area designs that the plaintiff's experts propose.  The plaintiff moves to preclude Marcus from offering any of these opinions, challenging his qualifications and methodology.[121]

---

[119] ECF No. 162 at 12–13.

[120] ECF No. 173 at 25.

[121] ECF No. 162 at 15.

For many of the same reasons that Jarvis cannot provide expert testimony about accident causation, I hold that Marcus is precluded from offering his opinions about what happened during the accident, what caused it, or what could have prevented it.  Like Jarvis, Marcus is not an expert in human factors, a biomechanical expert, an accident reconstructionist, a traffic engineer, or a professional engineer.  It appears that he has spent his entire career in the parking industry.[122]  He is of the opinion that Hertz was not at fault for the incident that is the subject of this case, and he believes that it happened solely because "Mr. Stevens suffered pedal confusion."[123]  But the record reveals that the basis for this opinion is unreliable or unhelpful to the jury.  When asked what "qualifies" him to "give an opinion on pedal confusion," he replied that "[t]hese statistics" on the infrequency of pedal-confusion accidents "are readily available," and he has "done quite a bit of research on pedal confusion" because he testified in a case where someone was killed in a donut shop when a driver "had pedal confusion."[124]  This falls far short of demonstrating that his testimony derives from scientific, technical, or other specialized knowledge, will help the jury understand the evidence in this case, and is based on sufficient facts or data, as Rule 702 requires.

And like Jarvis, Marcus lacks the type of knowledge of the facts of the accident to allow him to provide a relevant, useful opinion about its cause or likelihood of being prevented. When asked at his deposition about the details of the crash, he was unsure about foundational facts like where Auler was positioned, explaining that "it would be a guess on [his] part."[125]  And he clarified that his opinion that Hertz was in no way at fault was "a personal opinion, not an expert

---

[122] ECF No. 164-1 at 5 (Marcus cv).

[123] ECF No. 174-1 at 15 (Marcus depo).

[124] *Id.* at 17.

[125] *Id.* at 19.

opinion."[126]  So, at trial, Hertz may not offer Marcus's testimony about pedal confusion or about what happened during the accident, what caused it, or what could have prevented it.

But the record is not sufficiently clear to permit me to determine whether Marcus should be permitted to provide expert testimony on the other issues in his report.  While the plaintiff contends—and Marcus's report reflects—that this witness is qualified only to opine on parking, and not necessarily the far narrower subject of this case, rental-car-return facilities, Hertz points out that Marcus "has designed many parking areas, including numerous rental[-]car[-]return areas and lanes."[127]  In his deposition, Marcus explained that he doesn't "get into the specific operations of the rental[-]car agencies" but does "lay out the initial layout" of the municipal garages in which car-rental agencies operate.[128]  I cannot tell, however, whether such experience qualifies him to offer his remaining opinions about the industry's design standards or Hertz's compliance with them, or to respond to plaintiff's experts' opinions.  So I reserve for a *Daubert* hearing the final ruling on these remaining issues.  Hertz will need to provide an offer of proof in the form of Marcus's testimony, to establish that he is qualified to provide such opinions and that they are based on reliable principles and methods.

### 4.    De Freitas's MIL #4 (to exclude Hertz's pedal-confusion expert Young) is granted in part and denied in part.

Plaintiff next seeks to exclude Hertz's human-factors expert Douglas Young, who opines that the accident was caused by Stevens's human error of confusing the gas for the brake pedal and that a lane-width reduction would not have prevented it.[129]  He argues first that "with no

---

[126] *Id*. at 21.

[127] ECF No. 173 at 30, 31–32.

[128] ECF No. 174-1 at 3–4.

[129] ECF No. 162 at 17–20.

understanding of traffic management," Young "is unqualified to opine on the key issues of this case."[130]  But that argument is grounded in De Freitas's oversimplified labeling of this case as one only of traffic management, which it's not.  So I decline to exclude Young on that basis.

Young is a human-performance and human-factors witness with a Ph.D. in Kinesiology who has "studied and analyzed issues related to reaction time, vision, and the control and operation of vehicles and machinery," along with "the effectiveness of warnings and safety information, operation of controls, as well as human error and its determinants—movement control, information processing, perception, memory, attention, stress, and training."[131]  The bulk of the opinion he offered in his initial report was that this "incident is consistent with a pedal[-]misapplication error in which Mr. Stevens inadvertently depressed the accelerator instead of the brake pedal."[132]  He builds up to this opinion with pages of summarized studies about pedal error.[133]  He reviewed the surveillance video of Stevens's journey into the facility, and he analyzed event-data-recorder (EDR) information retrieved from the subject vehicle after the incident, which reflects how and when the brake pedal was applied.[134]  He considered all the witnesses' deposition testimony about the incident and conducted a site visit of the Hertz location.  The record establishes that Young is qualified to offer his pedal-confusion opinion, that opinion is based on sufficient data and will help the jury determine a fact in issue, and it is based on Young's reliable application of reliable principles and methods.[135]

---

[130] *Id*. at 18.

[131] ECF No. 174-5 at 2 (Young report).

[132] *Id*. at 36.

[133] *See id*. at 19–31.

[134] *Id*. at 4.

[135] Fed. R. Evid. 702.

The same is not true for Young's supplemental opinion (offered to rebut the plaintiff's experts' opinions) that "[r]eduction in lane width would not have prevented the subject incident."[136]  To support this rebuttal opinion, Young summarizes in his supplemental report relevant findings from more than half a dozen studies about driver behavior in emergency situations.[137]  He explains that "the findings from scientific studies indicate that Mr. Stevens would be expected to steer into something regardless of the width of the lanes," and "an accident was likely to occur as a result of Mr. Stevens'[s] undetected and uncorrected pedal error, regardless of the lane widths at the incident rental[-]car[-]return center."[138]  So "it is unclear that there would have been a benefit to narrowing the lanes or blocking areas between lanes with barriers given what we know about human behavior in emergency situations,"[139] he concludes.

The bridge between Young's conclusion that "it is unclear that there would have been a benefit to narrowing the lanes" or making other design changes, however, is missing.  The notion that Stevens would have steered into *something*, regardless of the width of the lanes, is not the same as the conclusion that "the subject incident" as we know it would have still occurred.  And when pushed at his deposition, Young acknowledged that he didn't even have an "understanding of how extensive" Auler's injuries were.[140]  Without a full understanding of Auler's injuries at the scene, Young can't show that he has an understanding of "the subject incident" sufficient to opine about whether a lane-width change would have prevented it—in short, this opinion testimony is not based on sufficient facts or data.  Indeed, Young essentially admitted as much.

---

[136] ECF No. 174-7 at 12.

[137] *Id*. at 11.

[138] *Id*.

[139] *Id*.

[140] ECF No. 164-6 at 21–22.

After conceding at his deposition, "I can say [Auler's] injuries wouldn't necessarily be the same [with thinner lanes], but I don't know that you can say you could totally eliminate the injuries to her," he added that a true accident-reconstruction analysis would be needed, and he wasn't giving "any opinions about accident reconstruction."[141]  So although I deny the motion as to Young's initial pedal-confusion opinions, I grant it as to his rebuttal opinion that "[r]eduction in lane width would not have prevented the subject incident."[142]

### 5.   De Freitas's MIL #5 (to exclude human-factors expert Krauss) is granted in part and denied in part.

The last-challenged expert in plaintiff's set of motions is Hertz's second human-factors expert, David Krauss, who offers opinions that Hertz's signage and other markings did not contribute to this accident and that no changes to those features "would have altered the outcome of this accident."[143]  Krauss also supplied a supplemental report to refute Cohen's opinions.[144] The plaintiff moves to exclude Krauss's opinions from both reports as irrelevant and unreliable.[145]

To the extent that Krauss plans to rebut Cohen's lane-design-related opinions, that plan has been mooted by my ruling *supra* excluding Cohen's opinions in that regard.  So Krauss's criticisms of Cohen's opinions regarding the lanes are no longer relevant and will not come in.

But the plaintiff has not provided a valid basis to exclude the remainder of Krauss's opinions.  His criticisms miss the point.  Krauss's opinions are narrow and confined to Stevens's

---

[141] *Id*. at 22 (cleaned up).

[142] ECF No. 174-7 at 12.

[143] ECF No. 174-8 at 17 (Krauss initial report).

[144] ECF No. 174-10 (Krauss supplemental report).

[145] ECF No. 162 at 20–22.

32

1   signage and markings experience as he navigated through the Hertz facility.[146]   Thus plaintiff's

2   complaints that Krauss "has no idea as to the traffic volume at the location" and "refused to give

3   any opinion on pedal confusion" are inapt because that's not what he's offered for.

4   So I deny the motion to exclude Krauss's markings and signage opinions because the plaintiff

5   has not offered any plausible reason to do so.  Should Hertz intend to offer the testimony of

6   Krauss unrelated to his rebuttal of Cohen's lane-width opinions, Hertz will, of course, be

7   required to lay a proper foundation for his opinions at trial.

8

### 6.      De Freitas's MIL #6 (Officer Solomon's testimony about the accident) is granted in part.

9

10         Finally, De Freitas moves to exclude the testimony of Las Vegas law-enforcement officer

11   Paul Solomon,[147] the reporting officer whom Hertz offers to testify as to "how the accident may

12   have occurred based on his observations, the facts surrounding his investigation[,] and any

13   statements or discussions made by the parties or witnesses at the scene."[148]   De Freitas contends

14   that Hertz failed to properly disclose Solomon as a non-retained expert under Rule 26(a)(2)(C)

15   and that he is not qualified to testify as to whether Hertz bears fault for the accident under

16   *Daubert*.[149]   Solomon may not testify on these issues as an expert because Hertz—though it filed

17   a list of topics on which he is expected to testify—failed to disclose "a summary of the facts and

18   opinions."[150]   Regardless, Hertz makes little effort to argue that Solomon is qualified as an

19   expert to speak to its fault, so I grant the motion in part.  Solomon may testify only to his

20

21   [146] ECF No. 174-8; ECF No. 174-10 (Krauss reports).

22   [147] *Id.* at 23.

     [148] ECF No. 173 at 52.

23   [149] ECF No. 162 at 23–24.

     [150] Fed. R. Civ. P. 26(a)(2)(C)(ii).

personal observations that are within the purview of his experience as a lay fact witness; he may not offer any opinions on causation.

### Conclusion

IT IS THEREFORE ORDERED that Hertz's motion to bifurcate the trial **[ECF No. 157] is DENIED**.

IT IS FURTHER ORDERED that Hertz's motions to file excess pages **[ECF Nos. 161, 175] are GRANTED**.

IT IS FURTHER ORDERED that the parties' omnibus motions in limine **[ECF Nos. 158, 162] are GRANTED in part, DENIED in part, and DEFERRED in part** as specified in this order. To summarize, the following arguments, opinions, and evidence are excluded:

1. The opinions of the plaintiff's experts Gary Presswood and Joseph Cohen as to rental-car-industry standards for lane width and Hertz's compliance with them.

2. Opinions about the adequacy of Hertz's employee training.

3. Presswood's opinions about possible alternate designs for the Hertz rental-car-return area.

4. Evidence or argument that the litigation has affected De Freitas's health.

5. Post-death hedonic damages for Auler.

6. Opinions that Hertz's data management was negligent or contributed to the subject incident.

7. Opinions or argument that Hertz's noncompliance with its own policies or procedures was negligence per se.

8. Hertz expert Jeffrey Jarvis's opinions about how the accident happened, what caused it, or how the accident could have been prevented.

9.  Hertz expert Jerry Marcus's opinions about (a) pedal confusion and (b) what happened during the accident, what caused it, or what could have prevented it.

10. Hertz expert Douglas Young's rebuttal opinion that reduction in lane width would not have prevented the subject incident.

11. Hertz expert David Krauss's rebuttal of Cohen's lane-design-related opinions.

12. Causation opinions from Officer Solomon.

The parties must appear in Courtroom 6D of the Lloyd D. George U.S. Courthouse for a *Daubert* **hearing on Monday, May 22, 2023, at 1:30 p.m.**, to provide offers of proof and perform voir dire on the following experts and topic areas:

1.  The basis and methodology for plaintiff's expert <u>Gary Presswood</u>'s opinion that the accident would have had less serious effects had the lanes been just ten-feet wide;

2.  The factual and methodological basis for plaintiff's expert <u>Thomas Brannon</u>'s opinions about possible alternate designs for the Hertz rental-car-return area; and

3.  Defense expert <u>Jerry Marcus</u>'s qualifications to offer opinions about the industry's design standards, or Hertz's compliance with them, or to refute plaintiff's experts' opinions on rental-car-return facility design, and the principles and methods upon which he would offer such opinions.

_____
U.S. District Judge Jennifer A. Dorsey
May 17, 2023

35